The UNITED STATES of America for the Use of GAMERSTON & GREEN LUMBER COMPANY, a corporation, Plaintiff,

v.

PHŒNIX ASSURANCE COMPANY OF NEW YORK, a corporation, et al., Defendants.

The UNITED STATES of America for the Use of DEVINCENZI AND HASKINS, a general partnership, Plaintiff,

v.

PHŒNIX ASSURANCE COMPANY OF NEW YORK, a corporation, Lester Van Hagen, F. L. Clark, H. M. Stephens, Individually and as copartners doing business as Van Hagen & Clark Construction Company, a copartnership, et al., Defendants.

UNITED STATES of America for the Use and Benefit of SOULE STEEL COMPANY, a corporation, and Soule Steel Company, Plaintiffs,

v.

PHŒNIX ASSURANCE COMPANY OF NEW YORK, a corporation, Defendant.

UNITED STATES of America, for the Use and Benefit of RAYMOND CONCRETE PILE COMPANY, a corporation, and Raymond Concrete Pile Company, a corporation, Plaintiffs,

v.

PHŒNIX ASSURANCE COMPANY OF NEW YORK, a corporation, Defendant.

Nos. 36810, 36814, 36836, 36837.

United States District Court
N. D. California, S. D.

June 27, 1958.

Doyle & Clecak and Thelen, Marrin, Johnson & Bridges and Molkenbuhr & Molkenbuhr, San Francisco, Cal., for plaintiffs.

Bohnert & McCarthy, San Francisco, Cal., for defendant.

OLIVER J. CARTER, District Judge.

Plaintiffs, as suppliers of labor and materials to Van Hagen & Clark, contractors for the Post Library at the Presidio of San Francisco, have brought this action against the defendant, surety of the contractor, under the Miller Act. 40 U.S.C.A. § 270a. At the time of trial the Court limited the proof to the question of whether the Miller Act applied, and reserved all other issues for further trial pending determination of the Miller Act issue. Since the disposition of this issue may be decisive as to the remaining issues, the Court has exercised its discretion under Rule 42(b) of the Federal Rules of Civil Procedure, 28 U.S. C.A., in favor of a separate trial of the particular issue.

The evidence which is the background for conflicts between the parties is not disputed. The Presidio of San Francisco, one of the oldest military reservations in the West, is the property of the United States. In November, 1956, the machinery was started in motion for the construction of a new post library at the Presidio. Invitations for bids were issued and Van Hagen & Clark were the successful bidders. All contract docu-

ments were issued in the name of the United States on standard forms used for that purpose by the Department of the Army and prepared by the General Services Administration. The defendant issued bid and payment bonds as required by the Miller Act on standard forms prepared by the government.

Although the contract documents were in the name of the United States there were amendments to the invitation for bids and modifications, to the contract, which provided in part:

"In all cases where the words 'United States of America' or 'the government' appears change to read 'Special Facility Fund, Building 220, Presidio of San Francisco, California, a nonappropriated fund activity.'"

Then followed provisions substituting an individual in place of the contracting officer.

At the time of the issue of the bonds defendant was not aware of the amendments, or modifications, although its agents made no attempt to ascertain the existence of the amendments, or modifications. The parties have stipulated that the library was built on property of the United States, and is the property of the United States. Under these circumstances the defendant contends (1) that there was not intended to be, and there was not a contract with the United States, and therefore the Miller Act does not apply; (2) that the bond issued by defendant never came into legal existence; and (3) that the modifications and amendments made exonerated the defendant.

All of these contentions revolve around the interpretation of the Miller Act, and the extent of its application to the factual situation here disclosed. The Act provides (40 U.S.C.A. § 270a):

"Before any contract, exceeding $2,000 in amount, for the construction, alteration, or repair of any public building or public work of the United States is awarded to any person, such person shall furnish to

the United States the following bonds, which shall become binding upon the award of the contract to such person, who is hereinafter designated as 'contractor':"

The Act then goes on to provide for a payment bond "for the protection of all persons supplying labor and material in the prosecution of the work provided for in said contract for the use of each such person." The critical question here is whether the post library at the Presidio of San Francisco was a "public building or public work of the United States" so as to come within the coverage of the Act. The Court concludes that it is for the following reasons.

■■ The main thrust of defendant's argument is that there was no contract with the United States because the modifications and amendments changed the contract from one with the United States to one with an individual in charge of a special nonappropriated fund. While there is strong evidence to support the conclusion that the contract documents establish a formal contract with the United States, it is not necessary to rest the decision on that conclusion. Defendant's contention in this respect fails to recognize the underlying purpose of the Miller Act. The test is not whether there was a formal contract in the name of the United States, but whether there was a contract "for the construction * * * of any public building or public work of the United States." If the person or agency making the contract for the public building, or public work, on behalf of the United States had the authority to so contract, it is immaterial whether the contract is made in the name of the United States or such person or agency. To construe the Act otherwise would be to give it a narrow rather than a liberal construction, contrary to the expressed decisions of the courts which have dealt with the subject. See United States for Benefit and on Behalf of Sherman v. Carter, 353 U.S. 210, 216, 77 S. Ct. 793, 1 L.Ed.2d 776; MacEvoy Co. v. United States, 322 U.S. 102, 107, 64 S. Ct. 890, 88 L.Ed. 1163. The liberal construction required is that which is necessary to carry congressional intent as expressed in the Act. In United States for Benefit and on Behalf of Sherman v. Carter, supra [353 U.S. 210, 77 S.Ct. 797], the Supreme Court said:

"The Miller Act represents a congressional effort to protect persons supplying labor and material for the construction of federal public buildings in lieu of the protection they might receive under state statutes with respect to the construction of nonfederal buildings. The essence of its policy is to provide a surety who, by force of the Act, must make good the obligations of a defaulting contractor to his suppliers of labor and material. Thus the Act provides a broad but not unlimited protection."

■ The post library at the Presidio of San Francisco was constructed on property of the United States, and is property of the United States. The parties have stipulated to this fact, and in this sense it must be regarded as a public building of the United States. The contracting parties so regarded it, and it is difficult to imagine otherwise when a facility such as this is constructed on a military post. The source of funds, and the agency and persons charged with the duty to construct the library do not alter this conclusion. Giving effect to the modifications and amendments as claimed by the defendant does not alter this conclusion. As amended the "Special Facility Fund * * * a nonappropriated fund activity" was substituted in place of the "United States of America", or the "government", and a named, designated Army officer was substituted in place of "Contracting Officer", or "Purchasing and Contracting Office." The appropriate Army Regulations define the nature and purpose of a nonappropriated fund, and the duties and responsibilities of Army personnel charged with handling such funds, or fund activities. Army Regulation 230–5 (Exhibit 3) provides in part as follows in Section I, subdivisions 1 and 2(a):

"1. *Purpose*. These regulations set forth basic policies and principles governing the nonappropriated fund system in the Army establishment.

"2. *Scope*. a. The policies and operational principles prescribed by these regulations are applicable on a worldwide basis."

Subdivision 2(b) excludes from the effect of the Regulations private associations and the funds thereof, and distinguishes private associations from nonappropriated funds and such fund activities. Subdivision 3(a) defines a nonappropriated fund:

"A nonappropriated fund prescribed by these regulations is an entity established by authority of the Secretary of the Army for the purpose of administering moneys not appropriated by the Congress for the benefit of military personnel or civilian employees of the Army and not incorporated under the laws of any State or the District of Columbia. Nonappropriated funds authorized by these regulations are instrumentalities of the United States."

Then follow definitions of "Revenue-producing Funds", "Welfare Funds", "Sundry Funds", "Installation", "Major Command", and "Civilian Employees". Subdivision 4 provides:

"(a) It is the policy of the Department of the Army to promote and to provide a well-rounded morale, welfare, and recreational program to insure the mental and physical well-being of its personnel. Adequate free-time facilities should be provided, operated, and maintained through financial support from funds appropriated by the Congress of the United States. Nonappropriated funds will be used to supplement the cost of programs using these facilities as prescribed in these and other applicable regulations. Three general categories of nonappropriated funds are authorized within the Army as follows:

"(1) Revenue-producing;

"(2) Welfare; and

"(3) Sundry.

"(b) Nonappropriated funds established primarily for civilian employees are intended to meet requirements in relation to employment, and to offset obstacles to recruitment and retention of the civilian work force.

"(c) Nonappropriated funds will be provided necessary command supervision and housing, grounds, maintenance and repairs, supplies, equipment, and utilities in accordance with AR 210–55.

"(d) Nonappropriated funds authorized by these regulations are instrumentalities of the Federal Government and as such are entitled to all the immunities and privileges which are available under the Federal Constitution and statutes to the departments and agencies of the Federal Government. Among the additional characteristics peculiar to nonappropriated funds established by these regulations are the following:

"(1) Such funds are established and supervised as a command function by officers or employees of the Government acting within the scope of their official capacity.

"(2) Individuals, installations, organizations, and units have no proprietary interest in these nonappropriated funds, and profits, if any, generated by such funds do not accrue to any individual.

"(3) Accumulations of nonappropriated funds which are in excess of the requirements of an installation, organization, or unit may be redistributed to other activities, installations, organizations, or units in accordance with procedures established by the Department of the Army."

By these Regulations the Secretary has established a well rounded and clearly defined system for the management and use of money and property of the United States. The Regulations call nonappropriated funds "instrumentalities of the United States" created "for the purpose of administering moneys not appropriated by the Congress for the benefit of military personnel or civilian employees of the Army." They are "entitled to all the immunities and privileges which are available under the Federal Constitution and statutes to the departments and agencies of the Federal Government." As such they come within the purpose of the Miller Act when they are used to construct public buildings on government property. Whatever may be their status insofar as the names used in making contracts, nonappropriated funds are recognized agencies of the United States under Army regulations, and must be recognized as such by persons doing business with them. In this respect they are similar to post exchanges, which were called "arms of the government deemed by it essential for the performance of governmental functions." Standard Oil Co. of California v. Johnson, 316 U.S. 481, 485, 62 S.Ct. 1168, 1170, 86 L.Ed. 1611.

That the post library in question is a "public building or public work" is borne out by the cases which deal with the interpretation of these words as they are used in the Miller Act, and its predecessor the Heard Act (40 U.S.C.A. § 270, prior to 1935). By comparison in this respect it stands on much better footing than the library at Howard University, a private institution, which was held to be covered by the Miller Act in United States, to Use of Noland Co., Inc., v. Irwin, 316 U.S. 23, 29, 62 S.Ct. 899, 902, 86 L.Ed. 1241, where the court said:

" * * * the whole concept of 'public works' has been considerably altered since the enactment of the Heard Act in 1894 and particularly within the last dozen years, and the question of title to the buildings or improvements or. to the land on which they are situated is no longer of primary significance."

Here the funds used were Federal funds, whether appropriated or nonappropriated. It falls within the definition used in Peterson v. United States, 6 Cir., 119 F.2d 145, 147:

"The term 'public work' as used in the act is without technical meaning and is to be understood in its plain, obvious and rational sense. The Congress was not dealing with mere technicalities in the passage of the Act in question. 'Public work' as used in the act includes any work in which the United States is interested and which is done for the public and for which the United States is authorized to expend funds."

A comparison of the Miller Act and its predecessor, the Heard Act, is helpful in determining the scope of the Miller Act on the question of whether a formal contract with the United States is essential to coverage by the Miller Act. The Heard Act provided:

"Any person or persons entering into a *formal contract with the United States* for the construction of any public building, or the prosecution and completion of any public work or for repairs upon any public building or public work, shall be required before commencing such work, to execute the usual penal bond * * * ".

For a general discussion of the history of the Heard Act see United States ex rel. Purity Paint Products Corp. v. Aetna Casualty & Surety Co., D.C.Conn.1944, 56 F.Supp. 431.

When the Miller Act was enacted in 1935 for the purpose of liberalizing the Heard Act, the reference to "a formal contract with the United States" was eliminated. Instead, the Miller Act simply refers to "any contract, exceeding $2,000 in amount, for the construction, alteration, or repair of any public building or public work of the United States."

This change is highly significant, for it indicates a Congressional intent to

transfer emphasis from the requirement of a formal contract with the United States to the character of the project, namely, whether it relates to "any public building or public work of the United States." Of course, there must be a contract, but the decisive question is whether the contract relates to "any public building or public work of the United States." If so, then the contractor is required to furnish the performance and payment bonds prescribed in the Act.

Defendant places much emphasis on United States for Use of General Electric Corp. v. Centerline Gardens, 6 Cir., 1958, 253 F.2d 133. There Centerline Gardens, Inc., a private corporation, entered into a contract with Heftler Construction Co., a private construction company, to build Wherry Act (12 U.S.C.A. § 1748d) housing on government land, which was leased to Centerline by the government for seventy-five years. The question was whether the Miller Act covered suppliers of Heftler. The court said at page 134:

> "The underlying weakness in appellant's theory is that the appellee, Centerline Gardens, Inc., cannot be characterized rightly as a 'contractor' under the terms of the Miller Act. The only construction contract was that between Centerline Gardens and Heftler Construction Company."

Here the contractor, Van Hagen & Clark Construction Company was building the post library, and there was no lease of government property to a private party intervening between the construction contractor and the government.

Under these circumstances the Court concludes that the Miller Act applies. Defendant contends that the bond never came into legal existence, and that the modifications and amendments made exonerated the defendant. From what has been said heretofore it is obvious that if the Miller Act applied then the bond came into existence legally. The evidence shows it was issued by defendant to secure performance of the contract for the construction of the post library, a public building of the United States.

The modifications and amendments did not change the nature of the contract, but, at most, simply changed the names of some of the contracting parties without in any way eliminating or defeating the interest of the United States under the Miller Act.

Plaintiff must prevail on this issue. It is, therefore, ordered, adjudged and decreed that the Miller Act applies to the contract and bond which is the subject of this action.

Trial of the remaining issues may be had upon the application of any of the parties to this action.

Counsel for plaintiffs shall prepare and present an appropriate order in accordance herewith.