UNITED STATES for the use of JAMES F. O'NEIL COMPANY, Inc.,

v.

MALAN CONSTRUCTION CORPORATION and Continental Casualty Company.

No. 3253.

United States District Court
E. D. Tennessee, N. D.

Nov. 28, 1958.

Porteous & Johnson, Wm. A. Porteous, Jr., New Orleans, La., Poore, Cox, Baker & McAuley, J. W. Baker, Knoxville, Tenn., for plaintiff.

W. W. Kennerly, Donaldson, Montgomery & Kennerly, Knoxville, Tenn., for defendant.

ROBERT L. TAYLOR, District Judge.

This is a matter arising under the Miller Act, 40 U.S.C.A. §§ 270a–270d. The plaintiff in this case was a sub-contractor of Malan Construction Corporation (hereinafter called Malan), a prime contractor of the Atomic Energy Commission for the building of a Multi-curie Fission Products Pilot Plant at Oak Ridge, Tennessee. The plaintiff, O'Neil Company, Inc., (hereinafter called O'Neil), was a Louisiana Corporation and defendant Malan was a New York Corporation. In the course of the work a dispute arose and O'Neil has sued Malan and its bonding company for $82,-318.33.

The defendants have made a motion for summary judgment on the ground that the plaintiff, a foreign corporation, did not qualify itself to do business in the State of Tennessee in compliance with the statutory requirements of that state. Defendants contend that plaintiff's failure to comply with the statute rendered its activities in the state illegal and that it is precluded from maintaining this suit as a matter of law.

Section 1 of the Miller Act (40 U.S.C.A. § 270a) provides that before any contract exceeding $2,000 in amount for the construction of any public building or public work of the United States is awarded to any person or contractor, such person or contractor shall furnish to the United States a payment bond for the protection of all persons supplying labor and material in the prosecution of the work provided for in said contract.

Section 2 of the Miller Act (40 U.S.C. A. § 270b) provides that *every* person (not just those who have qualified under state laws) who has furnished labor or material in the prosecution of the work under such contract and who has not been paid in full therefor "shall have the right to sue on such payment bond for the amount, or the balance thereof, unpaid at the time of institution of such suit and to prosecute said action to final judgment for the sums justly due him: ......"

Section 2 also provides that every suit instituted under that section "shall be brought in the name of the United States for the use of the persons suing, in the United States District Court for any district in which the contract was to be performed and executed and not elsewhere, irrespective of the amount in controversy in such suit, but no such suit shall be commenced after the expiration of one year after the date of final settlement of such contract."

■■ It seems clear from an examination of Sections 1 and 2 of the Miller Act that Congress was creating a right for the benefit of persons supplying labor and material on Federal construction. Such suppliers were not permitted a lien upon public buildings or public works of the United States; and the Miller Act and its predecessor, the Heard Act, were enacted to give such suppliers needed protection. It is clear that in so doing Congress was creating a right under Federal laws irrespective of the amount in suit and provided that suit thereon should be brought in the United States District Courts and not elsewhere. It seems clear also that the rights so created by the Miller Act are not based on the diversity statute since there is no jurisdictional amount. This being true, if the jurisdiction of this court rests not on diversity of citizenship but on substantive rights created by an Act of Congress, then limitations which the Tennessee courts have placed upon the right to sue have no relevance here.

But for the fact that it interprets the Federal Employers' Liability Act, 45 U.

S.C.A. § 51 et seq., rather than the Miller Act, the case of Dice v. Akron, Canton & Youngstown Railroad Co., 342 U.S. 359, 361, 72 S.Ct. 312, 314, 96 L.Ed. 398, is almost on all fours with our case here. Therein the question was raised whether the validity of a release taken under the F. E. L. A. was determined by federal rather than state law. The Court said:

"* * * Congress in § 1 of the Act granted petitioner a right to recover against his employer for damages negligently inflicted. State laws are not controlling in determining what the incidents of this federal right shall be. Chesapeake & Ohio R. Co. v. Kuhn, 284 U.S. 44, 52 S.Ct. 45, 76 L.Ed. 157; Ricketts v. Pennsylvania R. Co., 2 Cir., 153 F. 2d 757, 759, 164 A.L.R. 387. *Manifestly the federal rights affording relief to injured railroad employees under a federally declared standard could be defeated if states were permitted to have the final say as to what defense could and could not be properly interposed to suits under the Act.* Moreover, only if federal law controls can the federal Act be given that uniform application throughout the country essential to effectuate its purposes. * * *" (Emphasis supplied)

In a very recent case, Lyon v. Quality Courts United, Inc., 249 F.2d 790, 793, the Court of Appeals for the Sixth Circuit in an opinion by Judge Stewart (now Mr. Justice Stewart of the United States Supreme Court) dealt with an analogous situation in the field of trademark law. In that case the plaintiff sought to enjoin a corporate motel owner from using plaintiff's trademark to advertise its motel. A defense was made that the case was essentially an action ex contractu and that Federal jurisdiction rested only upon diversity of citizenship and that since the plaintiff had carried on activities in Ohio without having been licensed in Ohio, it was barred from maintaining the action both in the courts of Ohio and in the Federal Court.

We quote at some length from the opinion of the Court of Appeals and note that the Court concluded that a substantial claim under Federal laws was stated, and affirmed the action of the District Court in holding that failure to secure a license from the State of Ohio was not an impediment to maintenance of the action in the Ohio Federal Court.

"If the defendants are correct in their position that the only valid basis for federal jurisdiction in this case is the diverse citizenship of the parties and the requisite jurisdictional amount, 28 U.S.C.A. § 1332, there is substantial merit in their contention that the district court should have dismissed the plaintiff's complaint. Ohio clearly requires a foreign nonprofit corporation to secure a license before exercising its corporate privileges in a continual course of transactions in Ohio. Just as clearly Ohio has closed its courts to foreign nonprofit corporations which should have obtained such a license and have failed to do so. Moreover, if the courts of Ohio were closed to this plaintiff, so also was the federal court in that state in a diversity of citizenship case. Woods v. Interstate Realty Company, 1949, 337 U.S. 535, 69 S.Ct. 1235, 93 L.Ed. 1524. Thus, if the defendants' major premise is sound, the only doubtful issue would be the factual one of whether the plaintiff's activities in Ohio, including advertising and periodic inspections of the members' courts, constituted 'a continual course of transactions' within the state. Cf. National Sign Co. v. Maccar [Cleveland] Sales Co., Cuyahoga [County], 1929, 33 Ohio App. 89, 168 N.E. 758; Clare & Foster, Inc., v. Diamond S. Electric Co., Erie [County], 1940, 66 Ohio App. 376, 34 N.E.2d 284.

"If the defendants' major premise is invalid, however, their entire argument collapses. If the court's jurisdiction in this case rested not on diversity of citizenship, but rather on its function as a national court to enforce a substantive right created by Congress, then any limitations which Ohio imposes on its courts would be irrelevant. Lisle Mills v. Arkay Infants Wear, D.C.E.D.N.Y. 1950, 90 F.Supp. 676; see Holmberg v. Armbrecht, 1946, 327 U.S. 392, 66 S.Ct. 582, 90 L.Ed. 743. The plaintiff's complaint, although alleging diversity of citizenship and that the amount in controversy exceeded $3,000, exclusive of interest and costs, explicitly stated that 'This action is brought under the trade-name and trade-mark laws of the United States, U.S.C., Title 15. * * *' It is of no moment that the complaint may also have stated a common law action for breach of contract, or that the plaintiff might have confined his invocation of federal jurisdiction to diversity of citizenship. ' * * * [T]he party who brings a suit is master to decide what law he will rely upon, and therefore does determine whether he will bring a "suit arising under" the patent or other law of the United States by his declaration or bill.' The Fair v. Kohler Die & Specialty Co., 1913, 228 U.S. 22, 25, 33 S.Ct. 410, 411, 57 L.Ed. 716; see Bell v. Hood, 1946, 327 U.S. 678, 681, 66 S.Ct. 773, 90 L. Ed. 939.

"It thus becomes necessary only to determine whether the facts alleged in the complaint actually constituted a claim within the jurisdiction of the federal court, independent of its diversity jurisdiction."

We are of the opinion that these holdings are binding upon this Court if a substantial Federal right is created for the benefit of a supplier of labor or materials by the Miller Act. See also, United Mine Workers of America v. Patton, 4 Cir., 211 F.2d 742, 749, 47 A.L.R. 2d 850.

A similar case is that of Lisle Mills, Inc., v. Arkay Infants Wear, Inc., D.C., 90 F.Supp. 676, in which the plaintiff brought an action for a declaratory judg-

258

ment that certain letters patent issued to defendant were invalid and for damages for unfair competition. The defendant sought to have the complaint dismissed on the ground that plaintiff was doing business in the State of New York as a foreign corporation without first obtaining a certificate of authority. The Court held that, even though a cause was stated based on diversity of citizenship, the complaint showed that a Federal question was also involved; and decided that no power resided in the Legislature of the State in such a case to close not only its own courts but also the Federal courts to a suitor who was doing business in the State without authority.

Similarly the Supreme Court in Holmberg v. Armbrecht, 327 U.S. 392, 66 S. Ct. 582, 90 L.Ed. 743, in an opinion by Mr. Justice Frankfurter, held that a suit in equity by creditors of a land bank to enforce the liability imposed upon shareholders of the bank by the Federal Farm Loan Act, 12 U.S.C.A. § 641 et seq., created a Federal right for which the sole remedy was in equity and that the state statute of limitations did not apply. The court said it was the duty of Federal courts sitting as national courts throughout the country to apply their own principles in enforcing an equitable right created by Congress.

■ The Federal courts have held that the Miller Act is highly remedial and should be construed liberally. MacEvoy Co. v. United States, 322 U.S. 102, 64 S. Ct. 890, 88 L.Ed. 1163; United States v. Peerless Casualty Co., 8 Cir., 255 F.2d 137; United States for Use and Benefit of Jones Contracting Co. v. Skilken, D.C. N.D.Ohio, 53 F.Supp. 14; Commercial Standard Insurance Co. v. United States, 10 Cir., 213 F.2d 106; and United States ex rel. Crowder v. Fidelity & Deposit Company of Maryland, D.C.W.D.La., 144 F.Supp. 322.

This is a stronger case for denial of defendants' motion than that presented by the situations in the Lyons and Lisle Mills cases. In each of those cases, on the facts, the action might have been based on diversity of citizenship. The

courts nevertheless held that even though diversity jurisdiction was presented, since the plaintiffs based their cases in one instance on the trademark laws and the other on the patent laws, the plaintiffs had the right to choose the basis for suit.

In the case here, there is no foundation for a choice. In this respect, it is like the Patton case, supra. A close reading of the Miller Act discloses that the draftsman was carefully excluding diversity of citizenship as a basis for suit, since the claimants were authorized to sue in the District Courts "irrespective of the amount in controversy." The Act requires a bond for all contracts exceeding $2,000 in amount. Sub-contracts thereunder could obviously be for a fractional part of the $2,000 minimum and suits could arise for very small amounts indeed. The Act explicitly pointed out that there would be jurisdiction in the United States District Court regardless of the amount.

The Act is also explicit that there is jurisdiction in the United States District Court, and nowhere else. It would not have been possible for the plaintiff here to have sued in the state court. Rights were confined to the Federal court. He could not shop around for a more favorable clime in which to try the case. The evils sought to be corrected by the decision in the case of Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, could not arise here since the suit could be brought only in the Federal court and nowhere else. The right created is distinctly a Federal right and, under the authority of Dice and Lyons cases, any limitations imposed by the Tennessee courts with respect to the trial of the cases brought by foreign corporations illegally doing business in the state would be irrelevant.

It would be futile, and would defeat the purpose of the Act, if, having created the right to a surety bond for the benefit of a supplier of labor and materials on a public work of the United States who remains unpaid, the right so given were simultaneously nullified by application of

the state law. As Mr. Justice Burton said in United States for Benefit and on Behalf of Sherman v. Carter, 353 U.S. 210, 216, 77 S.Ct. 793, 797, 1 L.Ed.2d 776:

"The Miller Act represents a congressional effort to protect persons supplying labor and material for the construction of federal public buildings *in lieu of* the protection they might receive under the state statutes with respect to the construction of nonfederal buildings. The essence of its policy is to provide a surety who, *by force of the Act, must make good the obligation of a defaulting contractor* to his suppliers of labor and material. Thus *the Act provides a broad but not unlimited protection.*" (Emphasis supplied)

In United States for Use of Glickfeld v. Krendel, D.C.N.J., 136 F.Supp. 276, 279, the court said:

"* * * while in the case at bar there is no direct contractual relationship between Glickfeld [the sub-contractor] and the United States, nevertheless, 40 U.S.C.A. § 270(b) grants a right to every person who has performed work provided for in a contract with the United States; and to restrict that right by holding that the performance is gratuitous unless in strict compliance with local contract law would not further the purpose of the statute which was intended to assure all workers and sub-contractors that they would receive compensation for their efforts. * * *"

See also, United States for Use of Harrington v. Trione, D.C.Colo., 97 F.Supp. 522; Dow v. United States, 10 Cir., 154 F.2d 707; and United States v. Seaboard Surety (U.S.D.C.E.D.N.Y.) decided June 5, 1944, reported in 8 CCH labor case at paragraph 62,290.

The Court is aware that there are cases purporting to hold that the suppliers' rights created under the Miller Act cannot be enforced in the Federal courts when the sub-contractor is in default under state statutes. Insofar as those cases conflict with the decision reached herein, this Court disagrees with their conclusions.

In reaching this conclusion it is well to point out that the offending foreign corporation is not immune to liability to the State of Tennessee for its alleged illegal act in doing business in the state without qualifying; and that such foreign corporation unlawfully engaging in intra-state business in the State remains subject to the penalties imposed by its statutes.

The motion for summary judgment is denied.