UNITED STATES of America, for the Use and Benefit of MUNROE–LANG-STROTH, INC., Plaintiff, Appellant,

v.

Joseph W. PRAUGHT, d/b/a J. W. Praught Company, et al., Defendants, Appellees.

No. 5476.

United States Court of Appeals First Circuit.

Heard May 13, 1959.

Decided Aug. 31, 1959.

Edward C. Park, Boston, Mass., Brooks Whitehouse, Portland, Me., on the brief, for appellant.

Charles P. Burgess, Waltham, Mass., William B. Mahoney, Portland, Me., on the brief, for Joseph W. Praught, appellee.

John W. Blakeney, Boston, Mass., Blakeney & Blakeney, Boston, Mass., on the brief, for Travelers Indemnity Co. and Continental Cas. Co., appellees.

Before MAGRUDER, Chief Judge, and WOODBURY and HARTIGAN, Circuit Judges.

### WOODBURY, Chief Judge.

This is an appeal from so much of a judgment entered in an action under the Miller Act, 49 Stat. 793, 40 U.S.C.A. §§ 270a–270d, as disallowed the use plaintiff's claim for the cost of constructing a cofferdam. There is no serious dispute over the basic facts which for present purposes can be stated in summary fashion as follows:

The defendant Praught entered into a contract with the United States acting by and through the Department of the Navy to construct additions to the heating plant at the United States Naval Air Station in Brunswick, Maine, and gave a performance and payment bond in the standard form on which the defendants, the Travelers Indemnity Company and Continental Casualty Company, were sureties. Praught subcontracted some of the work, consisting in part of driving piles, to the use plaintiff, Munroe-Langstroth, Inc., and another portion of the work, consisting in part of burying large oil storage tanks, to another subcontractor, one MacDonald. The use plaintiff furnished the labor and materials called for by its contract with Praught and Praught paid the use plaintiff therefor, in major part upon the completion of the work and for the small balance remaining by payment of the judgment entered in the case at bar.

At about the time the use plaintiff completed the work it had contracted with Praught to perform, MacDonald ran into unexpected difficulties in performing his subcontract owing to unstable sub-soil conditions. The upshot of conferences between MacDonald, the use plaintiff, and Praught was that a permanant cofferdam of steel piling was needed to overcome the difficulties encountered rather than a temporary wooden one such as MacDonald had planned to build and that the three would combine in an effort to convince the Naval authorities to authorize the additional expenses involved in the construction of a permanent steel cofferdam. In the meantime, with Praught's knowledge and consent, MacDonald told the use plaintiff to go ahead and drive the steel constituting the cofferdam which the use plaintiff estimated would cost approximately $15,000. The use plaintiff completed the work and billed MacDonald for the same. These events all took place during the late summer and early fall of 1954.

The joint efforts of Praught, MacDonald and the use plaintiff to convince the Naval authorities of the need for a permanent steel cofferdam were successful and the United States paid Praught

for the additional cost of the same. Praught in turn paid MacDonald. In March, 1955, MacDonald paid the use plaintiff $500 on account for the cofferdam but in spite of repeated demands paid nothing more and eventually went into bankruptcy.

In November, 1956, more than two years after the completion of the cofferdam, the use plaintiff wrote to Praught requesting payment of the balance due for that work but Praught refused to pay on the ground that the cost of the cofferdam was MacDonald's responsibility. The present action under the Miller Act against Praught and the sureties on his bond followed.

■ The District Court found that there was no contractual relationship express or implied between the use plaintiff and Praught with respect to the construction of the cofferdam. It found that Mac-Donald, not Praught, instructed the use plaintiff to do the work and that the use plaintiff looked only to MacDonald for payment until the latter went into bankruptcy and only then made claim upon Praught. In the face of this conduct of the use plaintiff, the court found that the joint efforts of the parties to convince the Naval authorities to keep and pay for the cofferdam, in which the use plaintiff actively and perhaps persuasively participated, was not enough to establish an implied contractual relationship as to that structure between the use plaintiff and Praught. On the record no fault can be found with these conclusions.

■ The use plaintiff, having no contractual relationship express or implied with the prime contractor for the construction of the Cofferdam, the question presented is whether the use plaintiff's direct contractual relationship with the prime contractor as to other aspects of the work covered by the latter's contract and bond dispenses with the necessity for the use plaintiff to give the prime contractor the notice required by the Miller Act of its claim for the construction of the cofferdam. Stated in greater detail, the question is whether a person who has a direct contractual relationship with a general contractor to do a part of the work covered by the prime contract may assert a claim under the Miller Act against a general contractor for other and additional labor and materials furnished to and at the request of another subcontractor if he has failed to give the general contractor written notice of his claim within ninety days of completion of the work. The District Court answered this question in the negative and we agree.

Section 2 of the Miller Act, 40 U.S.C.A. § 270b, first gives every person who has furnished labor or materials in the prosecution of work under any contract exceeding $2,000 in amount for the construction, alteration or repair of any public building or work of the United States a right of action on the bond required of the general contractor by § 1 of the Act, § 270a of the Code, to recover any unpaid balance due for his labor or materials. Then, by proviso, § 2 of the Miller Act imposes a notice requirement as a condition of suit in the case of persons not having direct contractual relations with the general contractor. This notice provision in material part is: *"Provided, however,* That any person having direct contractual relationship with a subcontractor but no contractual relationship express or implied with the contractor furnishing said payment bond shall have a right of action upon said payment bond upon giving written notice to said contractor within ninety days from the date on which such person did or performed the last of the labor or furnished or supplied the last of the material for which such claim is made, \* \* \*"

Since we are not aware of any authority squarely in point, we must rest our conclusion upon what appears to us to be the intention of Congress as manifested by the words it used in the Act.

■ Certainly Congress intended by passing the Miller Act to afford subcontractors and materialmen, no doubt in substitution for the mechanic's liens generally available against private property owners, a liberal remedy against the gen-

eral contractor. But the provision for notice indicates that Congress did not intend to strip the prime contractor, who is primarily liable, of all protection. The notice provision permits the prime contractor, after waiting ninety days, safely to pay his subcontractors without fear of additional liability to sub-subcontractors or materialmen. And this makes good sense for as to subcontractors it may well be assumed that the prime contractor would know the full extent of his liabilities. Without the notice provision, however, he would have no means of knowing the liabilities of his subcontractors to their subcontractors or their materialmen.

In the present case, Praught of course knew that the use plaintiff had constructed a cofferdam as part of the work MacDonald had contracted to do. But it could not know the extent of MacDonald's indebtedness to the use plaintiff without making inquiry of either one or the other. The fact that the use plaintiff had contractual relations with Praught as to other work in connection with the project which was covered by the same bond does not operate to increase the probability of notice to Praught of MacDonald's obligation to the use plaintiff for the cofferdam job.

These considerations lead us to believe that the intention of Congress was that notice of claim is necessary unless contractual relations, express or implied, between the prime contractor and the claimant existed with respect to the job out of which the claim sought to be enforced against the prime contractor and his surety arose.

And this construction of the Act does not deprive one in the use plaintiff's position of any remedy on the prime contractor's bond. It merely requires greater diligence on the part of such person while affording the prime contractor protection against stale claims of which he might well have no knowledge and which in the absence of notice he might have to pay twice, once to the subcontractor and again to the sub-subcontractor. Furthermore, this construction of the Act benefits subcontractors, for it permits the prime contractor safely to pay them promptly, that is, ninety days after the completion of the work.

Judgment will be entered affirming the judgment of the District Court.