GYPSUM CONTRACTORS, INC., PLAINTIFF-RESPONDENT, v. AMERICAN SURETY COMPANY OF NEW YORK, DE-FENDANT-APPELLANT.

Argued February 6, 1962—Decided May 7, 1962.

316

Mr. *J. Norman Brierley* argued the cause for plaintiff-respondent (*Mr. Joseph Pierce Lodge,* attorney).

Mr. *Edwin T. Ferren, III,* argued the cause for defendant-appellant (*Messrs. Richman and Berry,* attorneys, by *Mr. Edward I. Berry, Jr.,* a member of the firm).

The opinion of the court was delivered by

FRANCIS, J. Plaintiff, Gypsum Contractors, Inc., a subcontractor, instituted this suit in the Superior Court, Law Division, on two bonds furnished by defendant, American Surety Company of New York, on behalf of the general contractor, F. D. Rich Construction Co., Inc. The bonds were to secure payment for all labor and materials furnished in the prosecution of the work covered by the principal contracts calling for the construction of homes for military personnel at the United States Air Force Base in Syracuse, New York. The complaint alleges the supplying of labor and materials to Rich Construction Co. in connection with the project and its failure to pay plaintiff for them. Ameri-

can Surety Company, a New York corporation licensed to do business in New Jersey, in accordance with *N. J. S. A.* 17:32-2, had appointed the Commissioner of Banking & Insurance of this State as its agent for the acceptance of service of process in actions properly brought against it here. In this case the summons was served in that fashion. Following service, defendant obtained a stipulation from plaintiff extending the time for answer or to make a motion directed to the complaint. A motion was then made to dismiss the action for lack of jurisdiction of the New Jersey courts. After argument the trial court declined to dismiss, whereupon the Appellate Division granted leave to appeal. We certified the matter on our own motion.

It is undisputed that Rich Construction Co., as general contractor, entered into two contracts with the Department of the Air Force for the construction of Armed Services Housing Projects (housing for military personnel) at the United States Air Force Base at Syracuse, New York. Plaintiff's allegation in the complaint of the furnishing of labor and materials therefor under a written agreement with Rich Construction Co. is likewise undenied on the record before us.

As a condition precedent to the award of a contract for the construction "of any public building or public work of the United States," the Miller Act, 40 *U. S. C. A.* § 270a, requires the contractor to furnish two surety bonds satisfactory to the officer awarding the contract. One must be a performance bond "for the protection of the United States"; the other must be a payment bond for the protection of all persons supplying labor and material in the prosecution of the work and "for the use of each such person." The standard forms of such bonds prescribed by the Code of Federal Regulations in 1935 appear in the Appendix of Title 41, Public Contracts, §§ 54.15, 16, 41 *U. S. C. A. Appendix*. We are concerned in the present case only with a payment bond, the conditions of which substantially match that form, as well as

the form prescribed in 1956 by the Federal Housing Commission in connection with the Capehart Act, to be discussed hereafter.

Section 270b of Title 40 confers on every person who has furnished labor or material in the doing of the work covered by the construction contract for which a payment bond has been provided, and who has not been paid in full therefor within a fixed time limit, a right to sue on the bond. It also gives a right of action thereon to a person having direct contractual relationship with a subcontractor but having no contractual relationship with the contractor, who supplies labor or material, providing he gives written notice, in the manner prescribed, to the contractor within ninety days from the date of the last labor performed or materials furnished. The provisions of 270b are not specifically included in the Miller Act standard form referred to above. Obviously, that is unnecessary as they would be read into the bond in any event. Mention is made of the fact only to note that they are written into the payment bond now before us in accordance with the 1956 Housing Commissioner's prescribed form.

Subsection (b) of 270b ordains:

"Every suit instituted under this section *shall be brought* in the name of the United States for the use of the person suing, *in the United States District Court* for any district in which the contract was to be performed and executed *and not elsewhere,* irrespective of the amount in controversy in such suit, * * *." (Emphasis ours)

This limitation represents positive Congressional policy and controls the selection of the forum where action may be brought on the bond. *United States v. Congress Construction Co.,* 222 *U. S.* 199, 32 *S. Ct.* 44, 56 *L. Ed.* 163 (1911); *United States -for Use and Benefit of Bryant Electric Co. v. Aetna Casualty & Surety Company,* 297 *F. 2d* 665 (2 *Cir.* 1962); *Lasley v. United States,* 285 *F. 2d* 98 (5 *Cir.* 1960); *United States for Use and Benefit of Fairbanks Morse & Co. v. Bero Construction Corporation,*

148 *F. Supp.* 295 (*D. C. N. Y.* 1957); *United States v. Zschach Const. Co.,* 110 *F. Supp.* 551 (*D. C. Okla.* 1953); *United States to Use of New York Plumbers' Specialties Co. v. Silverburgh Const. Co.,* 10 *F. Supp.* 121 (*D. C. N. Y.* 1935); *Pierce Contractors v. Peerless Casualty Company,* 81 *So. 2d* 747 (*Fla. Sup. Ct.* 1955); *Alleva v. Maryland Casualty Co.,* 248 *App. Div.* 599, 287 *N. Y. S.* 583 (*App. Div.* 1936); *Gardner v. Roberts-Nash Const. Corp.,* 104 *N. Y. S. 2d* 657 (*Sup. Ct.* 1951). In *Congress Construction Co., supra,* the United States Supreme Court, in dealing with the forerunner of the Miller Act, recognized essentially the same provision as a regulation of jurisdiction in the sense of power to entertain the suit. In effect, the court considered the provision as a withdrawal of suits on such bonds from the general jurisdiction of the federal trial courts, in cases where that jurisdiction would normally apply. Subsection (b) of 270b does not specify that its provisions shall be incorporated in the bond. That, however, is not necessary; the statute would be the measure of the nature and extent of the surety's liability. *Cf. United States for Benefit and on Behalf of Sherman v. Carter,* 353 *U. S.* 210, 77 *S. Ct.* 793, 1 *L. Ed. 2d* 776 (1957).

██ If the Miller Act were the only Congressional enactment imposing surety obligations on contractors granted contracts for construction of "public buildings or public works," we have no doubt, in view of its highly remedial purposes, that it would be applicable to contracts like the one involved here for housing projects for military personnel at army bases. See *United States to Use of Noland Co. v. Irwin,* 316 *U. S.* 23, 62 *S. Ct.* 899, 86 *L. Ed.* 1241 (1942); *Peterson v. United States,* 119 *F. 2d* 145 (6 *Cir.* 1941); *United States ex rel. and for Use of Westinghouse Elec. Supply Co. v. National Surety Corporation,* 179 *F. Supp.* 598 (*D. C. Pa.* 1959). The fact that the formal agreement was between the Department of the Air Force and the contractor, rather than in the name of the United

States and the contractor, should be considered a difference in form rather than substance. *United States for Use of Gamerston & Green Lumber Co. v. Phoenix Assurance Co. of New York,* 163 *F. Supp.* 713 (*D. C. Cal.* 1958). In 1955, however, the Capehart Act, 42 *U. S. C. A.* § 1594, was enacted relating to contracts for construction of military personnel housing. It authorized the Secretary of Defense or his designee to enter into such contracts for construction of urgently needed housing on lands owned or leased by the United States, and situated on or near a military reservation or installation, for the purpose of providing suitable living accommodations for military personnel. The contract is required to stipulate that each unit in the project shall be placed under the control of the Secretary of Defense or his designee as soon as it is ready for occupancy. The act further says:

"Any such contract shall provide for the furnishing by the contractor of a performance bond and a payment bond with a surety or sureties satisfactory to the Secretary of Defense, or his designee, and the furnishing of such bonds shall be deemed a sufficient compliance with the provisions of Section 270a of Title 40, and no additional bonds shall be required under such section."

Study of the Capehart Act against a background of the Miller Act furnishes ample evidence of the intention of Congress to recognize contracts made by the Secretary of Defense for the construction of housing for military personnel as public projects within the remedial language of the Miller Act. It reveals also an awareness by that body that the requirement of the Miller Act for submission of performance and payment bonds by the contractor was and ought to be applicable to Capehart projects. But to remove any doubt on the subject, provision was made for the furnishing of such bonds "with a surety or sureties satisfactory to the Secretary of Defense, or his designee." (The Miller Act says that the bonds shall be satisfactory to the officer awarding the contract, § 270a(a)(1), (2).) This

was followed by the declaration that such bonds, when approved, would constitute a sufficient compliance with Section 270a of Title 40, and eliminate the need for additional bonds under that section. Note that the reference is to *Section* 270a which outlines in general language the mandate for performance and payment security, as distinguished from Section 270b which specifies the character and limitations of the rights conferred by the bonds as well as the limitation (under 270b(b)) on the right to sue thereon in the Federal district court for the district "in which the contract was to be performed and executed *and not elsewhere.*" (Emphasis added) We perceive no intent by Congress to render inapplicable to a Capehart bond any of the substantive provisions of Section 270b, particularly those relating to the forum for institution of suit thereon, or to authorize the Secretary of Defense or his designee to eliminate them. See *Lasley v. United States, supra; Autrey v. Williams & Dunlap,* 185 *F. Supp.* 802 (*D. C. La.* 1960).

█ Plaintiff points out that under Miller Act bonds the United States is named the obligee, while in this case it is not so named. But the construction contracts which were between the Mortgagor-Builder and the Department of the Air Force and "designated as 013–81007–Air–7 Contract No. AF–30(617)–275" and "013–81010–Air–10 Contract No. AF–30(617)–275" were made part of the bonds. There can be no doubt that those agreements concerned a public project of the United States. See *United States to Use of Acme Furnace Fitting Co. v. Ft. George G. Meade, etc.,* 186 *F. Supp.* 639 (*D. C. Md.* 1960); *United States ex rel. and for Use of Westinghouse Elec. Supply Co. v. National Surety Corporation, supra; United States for Use of Gamerston & Green Lumber Co. v. Phoenix Assurance Co. of New York, supra.* Moreover, in payment bonds, as distinguished from performance bonds, the United States is merely a formal party because the action thereon is required to be brought under 270b(b) to the use and for the

benefit of materialmen and laborers. We consider absence of the United States from the bond as not affecting it as a Miller-Capehart instrument. Approval by the Secretary of Defense, which is apparent from the full record, is sufficient to invest it with that statutory character.

■ There is some disagreement and uncertainty in the few Federal cases on the subject as to whether a payment bond, approved as required by the Capehart Act, comes within the Miller Act if the United States is not named therein as the sole obligee. Obviously, as the court said in *Autrey v. Williams & Dunlap, supra,* the two acts are *in pari materia* and the intent of Congress was to require but one such bond for military personnel housing projects, subject to the approval of that bond by the Secretary of Defense or his designee. In our judgment, *United States to Use of Acme Furnace Fitting Co. v. Ft. George G. Meade, etc., supra,* expresses the sound view. The type housing and form of bond, designated FHA Form No. 2452 CP, were the same as are involved in the present case. Among other things, the court said:

"This bond is written on the regular federal government bond form designed as 'FHA Form No. 2452CP.' The heading of this bond bears the identifying caption relating to the Housing Contract: 'FHA Project No. 052–81002–Army No. 2.' This regular government bond form of the Federal Housing Administration in the statement of its conditions, significantly, sets forth in substance the provisions of the Miller Act enacted for the protection of suppliers of labor and materials on public works [as do the American Surety Company bonds in our case]. The bond, as required, was furnished to the mortgagor builder (Fort George G. Meade Defense Housing Corporation No. 1) and the mortgagee (Kings County Trust Co.) described as 'owner-obligee' and 'lender', respectively, as obligees.

To this court the conclusion is inescapable that the bond issued was a Capehart Act bond and thus, to reiterate, for the reasons previously stated when the two Acts involved are construed together this court has jurisdiction under the provisions of Section 270b of Title 40 U. S. C. A." 186 *F. Supp.,* at *pp.* 648, 649.

The opinion points out in a footnote that pursuant to 12 *U. S. C. A.* § 1748F the Federal Housing Commissioner,

obviously with the Capehart Act in mind, had issued a regulation which says:

"Assurance for the completion of a project shall be a performance bond and a payment bond satisfactory to the Commissioner and the Secretary of Defense or his designee with the mortgagor and mortgagee as joint obligees."

Plaintiff suggests an additional basis for its contention that defendant's bonds do not qualify as a statutory undertaking. The reference is to the following provision thereof:

"4. No suit or action shall be commenced hereunder by any claimant, * * *

* * * * * * * *

(c) Other than in a State court of competent jurisdiction in and for the county or other political subdivision of the State in which the project, or any part thereof, is situated, or in the United States District Court for the district in which the project, or any part thereof is situated and not elsewhere."

That clause which is broader, with respect to jurisdiction, than Section 270b(b) of the Miller Act, is said to negate the idea that the parties contemplated such a statutory bond. And plaintiff says when that broad language is considered along with the other departures in form from the usual Miller Act covenant, the conclusion must be drawn that the bond is simply a private undertaking.

It is difficult, of course, to decide what motivated the effort to recognize jurisdiction in the appropriate court of New York State. It may be the parties had in mind 28 U. S. C. § 1352 which says the federal district courts shall have concurrent jurisdiction with state courts of actions on bonds executed under any law of the United States. That section of the Code was seized upon by the Second Circuit in *United States for Use and Benefit of Bryant Electric Co. v. Aetna Casualty & Surety Company, supra,* to sustain jurisdiction in a New York federal district court of a Miller Act bond suit where otherwise the bond would have been worthless to materialmen and laborers because

the work was done in Labrador where there is no such federal court. That unusual result was the child of necessity. It does not in any way foster a view that addition of a clause to a bond authorizing suit in a state court of proper venue, as well as in the appropriate federal court, changes its character as a Miller Act undertaking. Nor does it indicate that Congress recognized a general right of suit on such a bond in any state court where process could be served upon the surety. In fact, in a footnote to the opinion, the court said:

"This is not to say that we read 28 *U. S. C.* § 1352, which gives federal courts jurisdiction on such [federal] bonds concurrently with state courts, as thus authorizing suit on Miller Act bonds in state courts. To the degree that it established an exclusive federal forum, 40 *U. S. C.* § 270b(b) remains applicable." 297 *F. 2d*, at *p.* 669.

There is no necessity for a decision in this case as to whether the additional provision relating to state court jurisdiction is invalid because of conflict with Section 270b(b). We need only say it does not alter our view that defendant's bonds are within the Miller and Capehart Acts.

▮ Plaintiff argues further that defendant's act in securing a stipulation extending the time to answer or to make a motion with respect to the complaint, operated as a waiver of the objection to jurisdiction. Without regard to whether the issue involved here is jurisdiction over the subject matter or the person of the defendant, the contention has no merit. *Allen B. DuMont Labs, Inc. v. Marcalus Mfg. Co.,* 30 *N. J.* 290, 301 (1959).

▮ Under all the circumstances the present suit on the bonds cannot be maintained in the courts of New Jersey, but must be brought in the proper federal district court in the State of New York. Accordingly, defendant's motion to dismiss should have been granted.

The order of the Law Division is reversed and the cause is remanded for the entry of an order in conformity herewith. No costs.

326

*For reversal*—Chief Justice WEINTRAUB, and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANE-MAN—7.

*For affirmance*—None.