**CONTINENTAL CASUALTY COMPANY, a Corporation, Appellant,**

v.

**The UNITED STATES of America for the Use and Benefit of the ROBERTSON LUMBER COMPANY, a Corporation, Appellee.**

No. 16912.

United States Court of Appeals
Eighth Circuit.

June 30, 1962.

James L. Lamb, of Degnan, Hager, Mc-Elroy & Lamb, Grand Forks, N. D., made argument for the appellant and filed brief.

John G. Shaft, of Shaft, Benson & Shaft, Grand Forks, N. D., made argument for the appellee and filed brief.

Before VAN OOSTERHOUT and BLACKMUN, Circuit Judges, and HENLEY, District Judge.

. HENLEY, District Judge.

This litigation arose out of the construction of certain housing for military personnel stationed at the Grand Forks Air Force Base, Grand Forks, North Dakota, under the housing program author-

ized by the Capehart Housing Act, as amended.[1] Appellee, use plaintiff below, furnished materials to the prime contractor engaged in the construction of the housing and not being paid therefor commenced this action against the prime contractor and one of the sureties on the contractor's statutory payment bond. The contractor did not defend the action. The issues between appellee and the surety were narrowed to a single question of law, and the District Court rendered summary judgment for appellee. United States for the Use and Benefit of the Robertson Lumber Company v. Progressive Contractors, Inc., et al., D.C.N.Dak., 196 F.Supp. 171. This appeal followed.

The 1956 amendment to the Capehart Act provided that all contracts for Capehart housing "shall provide for the furnishing by the contractor of a performance bond and a payment bond with a surety or sureties satisfactory to the Secretary of Defense, or his designee, and the furnishing of such bonds shall be deemed a sufficient compliance with the provisions of section 270a of Title 40, and no additional bonds shall be required under such section." [2]

The bond in suit was executed on a form specifically prescribed by the contract for the construction of the housing, which form had been adopted by the Department of Defense and by the Federal Housing Commissioner. The bond contained certain provisions for notice to be given by laborers or materialmen as a condition precedent to action on the bond. Admittedly, appellee failed to give the notice required by the bond, and appellant pleaded this failure as a complete defense.

In meeting this defense appellee contended that the relationship between the

Capehart Act and the Miller Act was such that a supplier of labor or materials to a Capehart housing contractor is entitled to all of the protection of the Miller Act, that the procedural provisions of the Miller Act (40 U.S.C.A. §§ 270b and 270c) extend to bonds executed under the Capehart Act, and that notice requirements inserted in a Capehart bond which are more stringent than the notice requirements of the Miller Act are invalid and are to be ignored. The notice provisions of the bond in suit are in fact more stringent than the notice requirements of the Miller Act, and appellee had met all of the requirements of that Act. Based on those premises appellee urged that the defense set up by appellant was without merit.

In attacking the judgment of the District Court appellant takes the position that although the Capehart Act refers to section 1 of the Miller Act, nevertheless a Capehart Act bond is not a Miller Act bond; that the Secretary of Defense or his designee has the power to prescribe the form and contents of a Capehart bond; that the form here used was prescribed by and satisfactory to the Department of Defense; that the notice provisions contained in the bond were valid, and that compliance therewith was a condition precedent to action on the bond.

Alternatively, appellant contends that even if the Secretary and the Federal Housing Commissioner had no right to insert in the bond notice requirements in excess of those contained in the Miller Act, nevertheless such requirements were in fact inserted, and that the liability of the surety should be measured by the terms of the instrument which it actually signed rather than by the terms of the Miller Act.

1. Act of August 11, 1955, Public Law 84–345, 69 Stat. 646 ff., as amended by Act of August 7, 1956, Public Law 84–1020, 70 Stat. 1110, 12 U.S.C.A. § 1748 ff. and 42 U.S.C.A. § 1594 ff.

2. 42 U.S.C.A. § 1594. Section 270a of Title 40 U.S.C.A., referred to in the Cape-hart Act, as amended, is section 1 of the Miller Act which requires the giving of performance and payment bonds by contractors engaged in the construction, alteration, or repair of any "public building or public work of the United States", where the amount of the contract exceeds $2,000.

■ As is well known, the Miller Act, adopted in 1935, has for its purpose the protection of those who supply labor or materials for use in Government construction. Fanderlik-Locke Co. v. United States for Use of Morgan, 10 Cir., 285 F.2d 939; United States for Use and Benefit of Hopper Brothers Quarriers v. Peerless Casualty Co., 8 Cir., 255 F.2d 137; St. Paul-Mercury Indemnity Co. v. United States for Use of Jones, 10 Cir., 238 F.2d 917. The Act, which is to be construed liberally, is designed to give such suppliers the same protection that State lien laws give ordinarily to persons furnishing labor and materials for use in private construction; and since the property of the United States is not subject generally to State lien laws, the bond protection of the Miller Act is in lieu of the liens provided by State law. United States for Use and Benefit of Munroe-Langstroth, Inc. v. Praught, 1 Cir., 270 F.2d 235; United States for Use of Gibson v. Harman, 4 Cir., 192 F.2d 999; United States to Use of Acme Furnace Fitting Co. v. Ft. George G. Meade Defense Housing Corporation, D.C.Md., 186 F.Supp. 639; United States for Use of James F. O'Neil Co. v. Malan Construction Corp., E.D.Tenn., 168 F.Supp. 255.

■■ As far as notice is concerned a Miller Act supplier who deals directly with a prime contractor is not required to give any notice as a condition precedent to a suit on the bond, although presumably he will make demand for payment before commencing his suit. Where the supplier deals with a sub-contractor, he is required to give notice to the prime if he expects to recover against the prime and the latter's surety, but in no event is a Miller Act supplier required to give notice to the surety before commencing suit or, in any event, to give notice to more than one person or entity. 40 U.S.C.A. § 270b(a).[3]

■ The purpose of the Capehart Act was to provide urgently needed housing for military personnel on Government property, and while Capehart housing is undoubtedly "Government housing," Capehart construction differs from conventional Government construction in certain significant respects.

Ordinarily, federal public works are paid for both initially and finally with federal funds. Capehart housing, on the other hand, initially is built and financed by private capital, although loans made by financial institutions to finance the construction are fully insured by the Federal Housing Administration. Both the Department of Defense and the Federal Housing Administration are concerned with the administration of the Capehart program, and the Federal Housing Commissioner has been authorized to promulgate' regulations concerning the program, 12 U.S.C.A. § 1748f, which authority has been exercised, see 24 C.F.R. Part 292a.

The Capehart Act now requires both payment and performance bonds, and standard forms of those bonds have been worked out by the Department of Defense and the Federal Housing Administration, and all Capehart housing contracts call for the giving of those particular bonds, as was done in this case.

With some allowance for possible oversimplification, a typical Capehart project may be described substantially as follows:

A building contractor desiring to build Capehart housing and who has been the successful bidder for such housing, and who has made satisfactory arrangements to secure private financing, forms a corporation to take a long term lease on the Government property on which the housing is to be constructed and to execute a mortgage on the leasehold estate to the financial institution which is to lend the money required for construction purposes. This corporation, which is at all times under complete Government con-

---

3. The prescribed form of Capehart bond which appellant executed required "dual notice" as a condition precedent to suit on the bond. That is to say, a supplier of labor or materials was required to give notice to at least two of the parties to the bond, one of which parties might be the surety.

trol, does not do the actual building of the housing units. That is done by the contractor under contract with the Government and with the corporation. The functions of the corporation are limited and to some extent nominal. It takes the lease and executes the mortgage and is a party to the construction contract. Further, it is one of the obligees named in the contractor's performance and payment bonds. In the statute, regulations, and contract documents the contractor is called the "eligible bidder," the corporation is called the "mortgagor-builder," and the lending agency is called the "mortgagee."

As the project is completed, the housing units are turned over to and operated by the Government and are occupied by military personnel. Quarters allowances previously paid to such personnel are retained by the Government and used to pay off the mortgage. When the mortgage is finally retired, the lease to the "mortgagor-builder" is terminated, and that corporation is dissolved, leaving title to the housing in the Government.

The contractor derives his profit from doing the actual building of the housing. From the Government's standpoint, advantages are seen in that federal funds are not expended for initial construction and, while the housing will be paid for eventually with federal money, that money would have been expended in any event as quarters allowances for the affected service personnel. In addition, the program may be supposed to provide a stimulus for private industry and capital.

Having made the foregoing comments with regard to the Miller Act and the

Capehart Act and the program contemplated by the latter Act, we return to the question for decision which is whether the notice provisions contained in the bond in suit were valid.

■ In holding those provisions invalid the District Court cited Lasley v. United States for Use of Westerman, 5 Cir., 285 F.2d 98; United States to Use of Acme Furnace Fitting Co. v. Ft. George G. Meade Defense Housing Corporation, supra; and Autrey v. Williams & Dunlap, W.D.La., 185 F.Supp. 802. Although none of those cases involved the validity of the notice provisions appearing in Capehart bonds,[4] it may be conceded that when those decisions are broadly read, they tend to support the District Court's decision in this case since they appear to proceed upon the theory that Capehart contractors and their sureties are subject to the procedural provisions of the Miller Act, including the notice provisions. This theory seems to be based on the premise that prior to the 1956 amendment to the Capehart Act, Capehart contractors were subject to all of the provisions of the Miller Act. From that premise it was reasoned that since the 1956 amendment modified only the prior existing substantive obligations of the contractors to furnish bonds meeting the requirements of 40 U.S.C.A. § 270a, the procedural provisions of the other sections of the Miller Act still apply to Capehart housing. See Westerman, supra, 285 F.2d at 100.

■ We find ourselves unable to agree with the Westerman case and the other decisions cited by the District Court and

4. Specifically, the question before the courts in all of those cases was whether a Capehart supplier could sue in federal court by virtue of the grant of federal jurisdiction conferred by the Miller Act. 40 U.S.C.A. § 270b(b). That question was answered in the affirmative in all three cases. However, as was recognized in Westerman, another basis for federal jurisdiction of a suit on a Capehart bond is to be found in 28 U.S.C.A. § 1352 which provides that the State and the federal courts shall have concurrent jurisdiction with respect to all actions brought on any bonds required by "any law of the United States." A Capehart bond is clearly a bond required by a "law of the United States," hence, federal jurisdiction of a suit on such a bond is established without regard to any relationship between the Miller Act and the Capehart Act. The Westerman case was tried on its merits by the writer of this opinion while sitting by special assignment in the Western District of Texas. However, the jurisdictional question had been passed upon by one of the regular judges of the District.

relied upon by appellee. Without necessarily quarreling with the Westerman premise that prior to 1956 Capehart contractors were required to furnish Miller Act bonds,[5] we are of the opinion that when Congress amended the Capehart Act in 1956 it recognized that Capehart housing is not conventional Government construction, that the private construction and financing of Capehart housing and the joint administration of the Capehart program by the Department of Defense and the Federal Housing Administration presented problems not encountered in ordinary Government construction, and that it intended, as far as bond protection for laborers and materialmen is concerned, to treat Capehart housing as *sui generis*. While we think that Congress intended that Capehart suppliers should have substantive bond protection essentially similar to that afforded Miller Act suppliers, we think also that Congress intended that the procedural provisions of Capehart bonds should be worked out and prescribed by the two agencies involved in the light of the unique nature of Capehart construction and of the peculiar problems which might be encountered in connection with such construction. In our estimation had Congress intended for the procedural provisions of the Miller Act to apply to Capehart contractors and their sureties it simply would have said so.

The interpretation which we place upon the 1956 amendment to the Act is in harmony with the administrative interpretation which has been placed upon it by the agencies charged with the implementation of the Capehart program. This is evidenced by the fact that the notice provisions in question, and certain other procedural provisions which differ from the procedural provisions of the

Miller Act, were inserted in the bond forms by the agencies themselves. It is settled, of course, that in the case of an ambiguous statute, and the 1956 amendment is ambiguous, the interpretation placed upon it by the agencies charged with its enforcement is entitled to great weight.

It may be argued plausibly that there should be general uniformity in the procedure required to be followed by Capehart suppliers on the one hand and Miller Act suppliers on the other. But, bearing in mind the differences between Capehart housing and more familiar types of Government construction, we do not know that absolute procedural uniformity is practicable, just, or desirable. Presumably, the agencies had some valid reason for prescribing dual notice as a condition precedent to action on a Capehart bond, although the record before us does not establish affirmatively what that reason was.[6]

The view which we take of the case renders it unnecessary for us to pass upon appellant's alternative contention that in any event its liability must be measured by the terms of the bond as written regardless of whether those terms should have been inserted in the bond. While United States for Use of W. B. Young Supply Co. v. Stewart, 8 Cir., 288 F. 187, the principal case cited by appellant in support of its alternative position, may be distinguished from the instant case, and while other relevant authorities appear to be in conflict,[7] the alternative contention is by no means frivolous in the circumstances here present. But, be that as it may, it is to be remembered that the only section of the Miller Act referred to in the Capehart Act is the section which requires the giving of a bond; and when Congress

5. We have seen no case in which the question was actually presented for adjudication.

6. Whatever the reason for its existence, the requirement itself is neither unreasonable nor oppressive. There is no suggestion here that Capehart suppliers cannot inspect or obtain copies of Capehart

bonds, and counsel for appellant stated without contradiction in the course of the argument that most of the suppliers of labor and materials for the Grand Forks project had in fact given the dual notice and had been paid.

7. See 43 Am.Jur. Public Works & Contracts, § 147 and authorities there cited.

said in the Capehart Act that the giving of a bond satisfactory to the Secretary of Defense or his designee should constitute compliance with the section of the Miller Act which requires that a bond be given, we think that the clear import of the language used was to take Capehart bonds entirely out of the Miller Act.

The judgment appealed from is reversed, and this cause is remanded to the District Court with directions to dismiss the complaint.

BLACKMUN, Circuit Judge (concurring).

I concur, although somewhat hesitatingly. This case, I suspect, is a very close one. I fully appreciate the force of the plaintiff's position when it urges (a) the purpose of the Miller Act, namely, affording all suppliers a protection equivalent to that normally provided by state lien laws; (b) the liberal approach given the Miller Act (see, for example, United States for Use and Benefit of Bryant Electric Co. v. Aetna Casualty & Surety Co., 2 Cir., 1962, 297 F.2d 665); (c) the *in pari materia* character of the Capehart and Miller Acts; and (d) the significance of the existing authorities, cited by the trial court and in Judge Henley's opinion (to which might now be added Gypsum Contractors, Inc. v. American Surety Co., 37 N.J. 315, 181 A.2d 174, 1962), which, although concerned primarily with jurisdiction, at least inferentially lend support to the argument that the procedural provisions of the Miller Act are equally applicable to matters arising under the Capehart Act.

I am persuaded, however, by the agency practice; by the distinction between Capehart projects and other public works so far as direct use of government funds is concerned; by the apparently greater exposure to risk in Capehart housing; by the feeling that the surety's obligation here should be measured by its contract, particularly where the rights of a non-party are concerned and where, as contrasted with the Miller Act, the statute is so unclear; by the absence of helpful material in the legislative history; and by the completely unexplained failure of this plaintiff to avoid his difficulty in the first instance by taking the small trouble to give the dual notice so clearly required by the bond.