The UNITED STATES of America for the USE AND BENEFIT OF MORRIS PAINT & VARNISH COMPANY, a corporation, Plaintiff,

v.

M. W. WATSON, first and real name unknown, and The Western Casualty and Surety Company, a corporation, Defendant.

Civ. A. No. 14-54.

United States District Court, D. Nebraska, Omaha Division. March 28, 1955.

Abrahams & Kaslow, Omaha, Neb. (Milton R. Abrahams Omaha, Neb.), for plaintiff.

Donald E. O'Brien, Sioux City, Iowa, for defendant.

DONOHOE, Chief Judge.

This action was instituted by the United States of America for the use and benefit of Morris Paint & Varnish Company, a corporation. Jurisdiction is vested in this court by virtue of Title 40, U.S.C.A. § 270b(b). After careful consideration of the properly admissible evidence adduced at the trial the court makes the following special

### Findings of Fact:

On the 21st day of November, 1952, the United States of America, acting through its duly authorized contracting officer entered into a construction contract with the defendant, "M. W. Watson, General Contractor". The contract provided that the defendant Watson would construct a general warehouse building at the Lincoln Air Base, Lincoln, Nebraska, according to plans and specifications set forth in the contract for a consideration of $398,000.

The defendant Watson, as principal, and the defendant, Western Casualty and Surety Company, a corporation of Fort Scott, Kansas, as surety, executed a payment bond (Standard U. S. Government Form No. 25A) in the penal sum of $199,265, conditioned upon prompt payment "to all persons supplying labor and material in the prosecution of the work provided for in such (construction) contract." This payment bond was accepted by the United States of America.

The contract contained the following specifications with regard to fire-retardant paint:

> "*Fire-retardant Paint* shall be similar and equal to 'Albi-R' as manufactured by Albi Manufacturing Company, Inc., 29 Bartholomen Avenue, Hartford 6, Connecticut, or 'Fyr-Kote' as manufactured by Morris Paint & Varnish Company, East St. Louis, Missouri."

\*   \*   \*   \*   \*   \*

> "*Samples and Tests.* Samples of each type of paint and each color proposed for use shall be submitted to the Contracting Officer, and approval thereof received before the

material represented by the samples is used on the project. Samples shall consist of 1 pint of each kind of paint, and 3 displays of each type and color of paint applied to wood strips 2 inches by 6 inches. In addition to the submission of samples, the Contractor shall submit authenticated reports of tests of the materials proposed for use, as directed by the Contracting Officer. Tests shall be in accordance with the requirements of Fed.Spec. TT–P–141b."

\* \* \* \* \* \*

"*Fire-retardant Coating.* Fire-retardant paint, tinted to closely match the final paint color specified or as selected by the Contracting Officer, shall be applied on surfaces hereinafter designated. The fire-retardant paint shall be mixed and applied as recommended and specified by the manufacturer. Coverage of surface per gallon of mixed paint shall not be greater than required to meet 'slow burning' classification of SS–A–118a. Torch testing of fire-retardant coatings applied by the Contractor will be made at 3 locations in the buildings and compared with tests of approved samples of coatings on like materials submitted by the Contractor prior to starting the work. If the coatings applied in the buildings fail to meet the torch tests, the Contractor shall apply additional coatings until the results of additional tests are approved. The Contractor shall refinish those portions of surfaces damaged by all torch tests at no additional cost to the Government."

Mr. R. V. Luebben, a painting subcontractor of the defendant M. W. Watson, was contacted by Mr. Barker, a representative of the Morris Paint & Varnish Company, sometime in August of 1953, with regard to the use of "Fyr-Kote" paint on the Lincoln Air Base job. Mr. Luebben indicated that he was willing to use "Fyr-Kote" and would authorize purchase of 500 gallons of such paint in the special color picked by the Contracting Officer of the United States; but that the paint would have to be approved by the area engineers. Mr. Barker called Mr. Fiala of the Corps of Engineers and was advised by him that "Fyr-Kote" was acceptable and would be approved. Mr. Barker related this to R. V. Luebben and he consented to authorize purchase of use plaintiff's paint. On August 28, 1953, M. W. Watson, the general contractor, sent the following letter to use plaintiff:

"Morris Paint & Varnish Company
27th & Douglas
Omaha 2, Nebraska
"Re: Contract DA–25–066–eng–2142, Gen. Whse & Storage Bldg., LAFB, Lincoln, Nebraska
Attention: A. Sophir
"Dear Sir:
"We have received the following telegram from R. V. Luebben, paint contractor on the above-referenced project.
" 'We are authorizing Morris Paint to ship five hundred gallon fyrekote for general warehouse. Please consider this your authority to make payment direct to Morris and deduct from my account.'
"In accordance with this telegram, we hereby authorize you to ship to M. W. Watson, General Contractor, Lincoln Air Force Base, Lincoln, Nebraska the amount of fireproof paint stated above and to bill us for same and we will deduct this from the account of R. V. Luebben.
"Very truly yours,
M. W. Watson,
General Contractor
By (signed) Thiel H. Sweet"

On September 4, 1953, the Morris Paint & Varnish Company shipped 500 gallons of "Fyr-Kote" via Watson Brothers Transportation Company to the defendant M. W. Watson, General Contractor, at Lincoln, Nebraska. When the

paint arrived it was refused by a representative of the defendant Watson.

On September 11, 1953, in Lincoln, Nebraska, in the presence of representatives of the Area Engineer, The Morris Paint & Varnish Company, and R. V. Luebben, samples of "Fyr-Kote" were subjected to a torch test. The results of the torch test are disclosed in the following letter:

"14 September 53

"W. R. Sorensen

Fire Retardant Paint Test, Genl. Warehouse,

Cont. DA-2142

"1. Torch tests were conducted on cane fiber boards painted with fire-retardant paint. The paints were Fyr-Kote as manufactured by the Morris Paint Company and Albi 99 as manufactured by the Albi Paint Company.

"2. The painted fiberboard samples were placed 5 inches from the torch each being removed after 60 seconds and then allowed to burn until fire went out on its own volition.

"A. Unpainted fiberboard samples
Sample #1—Depth burned —¼ inches
Area burned—Eliptical 11 inches x 8 inches
Sample #2—Depth burned —½ inches
Area burned—Eliptical 11 inches x 8 inches

"B. Fiberboard samples painted with 2 coats of Fyr-Kote (300 SF gal. per coat)
Sample #1—Depth burned —left undisturbed
Area burned—Circle 5 inch diameter.
Sample #2—Depth burned —¼ inches
Area burned—Circle 5¼ inches diameter
Sample #3—Depth burned —³⁄₁₆ inches
Area burned—Circle 5¼ inches diameter

"C. Fiberboard samples painted with 1 coat of Albi 99 (300 SF gal. per coat)
Sample #1—Depth burned —³⁄₁₆ inches
Area burned—Circle 5 inches in diameter
Sample #2—Depth burned —left undisturbed
Area burned—Circle 5 inches in diameter

"D. Fiberboard sample painted with 2 coats of Albi 99 (300 SF Gal. per coat)
Sample #1—Depth burned —⅛ inches
Area burned—Circle 5 inches in diameter
Sample #2—Depth burned —left undisturbed
Area burned—Circle 5 inches in diameter
Sample #3—Depth burned —left undisturbed
Area burned—5 inches in diameter

"4. The following general observations were made:

"a. Upon the application of the flame to 'Fyr-Kote' the paint began to scale off and afforded little or no protection to the board as to the penetration of the burning. It did, however, check the spread of fire.

"b. Upon the application of flame to 'Albi 99' the paint began to boil but remained in place and afforded fire protection both as to penetration and spread.

"c. Both samples painted with 'Fyr-Kote' and unpainted samples continued to flame or smolder after torch had been removed. No burning of sample painted with 'Albi 99' was observed after removal of torch.

"(Signed) W. R. Sorensen"

"cc Thurber
"Baber
"Sorensen

Since the general contractor seemed dissatisfied with the results of the torch test, a representative of the Morris Paint

& Varnish Company went to consult with the Area Engineer. After consultation use plaintiff transmitted the following letter to the painting subcontractor:

Morris' 43rd Year
"Wednesday   September 16, 1953
(Dictated Sept. 15)
"R. V. Luebben Co.
416 Commerce Bldg.
Sioux City, Iowa
"Dear Mr. Luebben:

"We have just returned from a conference with Mr. Fiala, Area Engineer, and also your foreman.

"As per Mr. Barker's conversation with you in the hospital yesterday, in which you agreed to use our material provided the Engineers approved its use, we have secured such approval from Mr. Fiala, and request your immediate instructions to the M. W. Watson Company to accept these materials as the transportation company is anxious to make delivery.

"If there are any further questions concerning this transaction please phone us immediately.

"Yours truly,
Morris Paint & Varnish Co.
(Signed) A. Sophir"

And the Area Engineer sent the following letter of confirmation to the general contractor:

"18 September 53
M. W. Watson
Subject: Fire Retardant Paint, General Warehouse, Contract No. DA–2142, Lincoln AFB

"Gentlemen:

"Reference is made to the use of 'Fyr-Kote' paint which was proposed by your company for painting the cane fiberboard on the subject project.

"This letter is to advise your company that this paint is approved, subject to the furnishing of a manufacturer's affidavit stating the quantity of paint required, in square feet per gallon, to meet the 'slow burning' classification of Federal Specifications SS–A–118a, and a report of tests from an independent laboratory confirming this statement.

"Your company may proceed at your own risk with the painting prior to our receipt of the manufacturer's affidavit and the test reports.

"It is requested that you signify by letter your understanding of the above terms for immediate application of the paint prior to beginning the work.

"Sincerely,
"(Signed) Almer L. Start
"Area Engineer"

The affidavit and report relating to tests of "Fyr-Kote" were furnished by the Morris Paint & Varnish Company in keeping with the requirements of the foregoing letter.

The painting subcontractor decided not to use the "Fyr-Kote" and M. W. Watson refused to accept the "Fyr-Kote"; consequently the Morris Paint & Varnish Company had it shipped to its warehouse in Omaha, Nebraska. The Contractor had agreed to pay $3.95 a gallon for the "Fyr-Kote" and because of its special color it has a present market value of approximately $1.00 per gallon. The Morris Paint & Varnish Company made a reasonable effort to dispose of the paint but was unable to do so.

Conclusion

■ The court has reached the conclusion that the paint sent by the use plaintiff to the defendant met all the specifications of the contract. It was "Fyr-Kote" as specifically required by the contract and it had the approval of the Area Engineer. This approval was never at any time withdrawn. With reference to the "torch test", it should be mentioned that this test was designed to determine whether the paint had been properly applied; not whether the paint was the type specified in the contract. In keeping with the principles announced in United States ex rel. Purity Paint Products Corporation v. Aetna Casualty

& Surety Co.; D.C.Conn.,1944, 56 F.Supp. 431, this court has reached the conclusion that the use plaintiff is entitled to recover damages in the sum of $2.95 per gallon for the five-hundred gallons of paint delivered to defendant M. W. Watson.

Counsel for use plaintiff shall prepare and submit for approval the appropriate judgment to be entered in accordance with this memorandum.