UNITED STATES of America, for the use and benefit of NEWPORT NEWS SHIP-BUILDING AND DRY DOCK COMPA-NY, a Virginia corporation,

v.

BLOUNT BROTHERS CONSTRUCTION COMPANY (a partnership composed of W. M. Blount, W. H. Blount and C. B. Blount)

and

United States Fidelity and Guaranty Company (a Maryland corporation).

Civ. No. 10811.

United States District Court
D. Maryland.

Nov. 25, 1958.

Ambler H. Moss, Semmes, Bowen & Semmes, Baltimore, Md., and J. Warren Stephens, Ferguson, Yates & Stephens, Newport News, Va., for plaintiff.

William L. Marbury, John Martin Jones, Jr., Piper & Marbury, Baltimore, Md., and James C. Blair, White, Bradley, Arant, All & Rose, Birmingham, Ala., for defendants.

THOMSEN, Chief Judge.

Defendant's motion to dismiss the amended complaint presents the question whether the protection of a Miller

Act [1] payment bond extends to a person who furnishes or contracts to furnish labor and materials to a *sub*-subcontractor.

The amended complaint alleges that defendant Blount Brothers Construction Company (Blount) contracted with the Department of the Navy to construct a water tunnel at Carderock, Maryland; that Blount subcontracted virtually all of the work except the actual erection and installation of the tunnel to Green Fuel Economizer Company, Inc. (Green Fuel); that Green Fuel in turn subcontracted the fabrication and machining of all of the tunnel sections except the test sections to General Metals, Inc. (General Metals); that General Metals entered into a contract with Newport News Shipbuilding and Drydock Company (Newport News), the use-plaintiff, under which Newport News fabricated and machined tunnel section flanges and made dimensional check of contraction sections "in order to determine that it was not able to machine contraction sections as required by the plans, specifications and drawings"; that in the performance of its contract with General Metals Newport News supplied and furnished material and performed labor for General Metals for the construction of a part of the tunnel; that the completed work is being held by Newport News in storage at its plant in Newport News, Virginia, awaiting shipping orders and the balance due from General Metals.

The complaint also alleges that the contract between General Metals, the *sub*-subcontractor, and Newport News, the use-plaintiff, was made with the knowledge and acquiescence of the prime contractor, Blount; but counsel for Newport News conceded at the oral argument that Blount did not assume any obligation to Newport News except such obligation as may be required by the Miller Act and assumed under the bond.

The complaint alleges that the total price for the materials, design and labor furnished by Newport News to General Metals was $63,249.67, of which General Metals has paid only $33,800.00, leaving a balance due of $29,449.67, for which repeated demands have been made on General Metals; that Blount and United States Fidelity and Guaranty Company (Surety) executed a payment bond pursuant to the Miller Act; and that Newport News gave Blount written notice of non-payment of its claim within ninety days from the date upon which the last of the labor was performed and the last of the material was furnished and supplied.

It appears, therefore, that Blount was the prime contractor; that Green Fuel was a subcontractor, who dealt directly with the prime contractor; that General Metals was a *sub*-subcontractor, i. e. a subcontractor of a subcontractor, who did not deal directly with the prime contractor; and that Newport News was a *sub-sub*-subcontractor, who dealt with the *sub*-subcontractor, General Metals, and not with either the prime contractor or any subcontractor.

■■ For the reasons stated below, I have concluded that the right to bring suit on a payment bond under the Miller Act is limited to (1) those materialmen, laborers and subcontractors who deal directly with the prime contractor and (2) those materialmen, laborers and *sub*-subcontractors who, lacking express or implied contractual relationship with the prime contractor, have direct contractual relationship with a subcontractor. In the instant case the use-plaintiff, Newport News, did not deal directly with the prime contractor nor with a subcontractor but with a *sub*-subcontractor, General Metals. It is therefore not entitled to recover under the bond.

Section 1(a) (2) of the Miller Act, 40 U.S.C.A. § 270a(a) (2), requires the prime contractor to furnish to the United States a payment bond with a surety "for the protection of all persons supplying labor and material in the prosecution of the work provided for in said contract for the use of each such per-

___

[1]. Act of August 24, 1935, c. 642, 49 Stat. 793, 40 U.S.C.A. § 270a et seq.

son." Sec. 2(a), 40 U.S.C.A. § 270b(a), provides: "Every person who has furnished labor or material in the prosecution of the work provided for in such contract" and who has not been paid in full therefor within ninety days after the last labor was performed or material supplied may bring suit on the payment bond for the unpaid balance: *"Provided, however,* That any person having direct contractual relationship with a subcontractor but no contractual relationship express or implied with the contractor furnishing said payment bond shall have a right of action upon the said payment bond upon giving written notice to said contractor within ninety days from the date on which such person did or performed the last of the labor or furnished or supplied the last of the material for which such claim is made, stating with substantial accuracy the amount claimed and the name of the party to whom the material was furnished or supplied or for whom the labor was done or performed."

The Heard Act,[2] which was the predecessor of the Miller Act, required government contractors to execute penal bonds for the benefit of "all persons supplying him or them with labor and materials in the prosecution of the work provided for in such contract." Construing the Heard Act, the Supreme Court held that the quoted phrase included not only those furnishing labor and materials directly to the prime contractor but also covered those who contributed labor and materials to subcontractors. United States for use and Benefit of Hill v. American Surety Co., 200 U.S. 197, 204, 26 S.Ct. 168, 50 L.Ed. 437; Mankin v. United States, 215 U.S. 533, 539, 30 S.Ct. 174, 54 L.Ed. 315; Illinois Surety Co. v. John Davis Co., 244 U.S. 376, 380, 37 S.Ct. 614, 61 L.Ed. 1206.

However, as the Supreme Court pointed out in MacEvoy Co. v. United States, 322 U.S. 102, 107, 64 S.Ct. 890, 893, 88 L.Ed. 1163, the Heard Act contained no provision similar to the proviso in sec. 2(a) of the Miller Act. The MacEvoy case presented the issue whether under the Miller Act a person supplying materials to a materialman, who in turn supplied them to the prime contractor, could recover on the payment bond executed by the prime contractor. The Supreme Court held that he could not recover, for reasons which are most persuasive if not controlling in the instant case. The Supreme Court said:

"The proviso of Section 2(a), which had no counterpart in the Heard Act, makes clear that the right to bring suit on a payment bond is limited to (1) those materialmen, laborers and subcontractors who deal directly with the prime contractor and (2) those materialmen, laborers and *sub*-subcontractors who, lacking express or implied contractual relationship with the prime contractor, have direct contractual relationship with a subcontractor and who give the statutory notice of their claims to the prime contractor. To allow those in more remote relationships to recover on the bond would be contrary to the clear language of the proviso and to the expressed will of the framers of the Act." 322 U.S. at pages 107, 108, 64 S.Ct. at page 894.

The Court referred to the House Report[3], which said that under the proposed Act: "A *sub*-subcontractor may avail himself of the protection of the bond by giving written notice to the contractor, but that is as far as the bill goes. It is not felt that more remote relationships ought to come within the purview of the bond." Footnote 3, 322 U.S. 108, 64 S.Ct. 894.

The question in MacEvoy, therefore, was whether the materialmen to whom the use-plaintiff had sold the goods, and who in turn supplied them to the prime

---

2. Act of August 13, 1894, c. 280, 28 Stat. 278, as amended by Act of February 24, 1905, c. 778, 33 Stat. 811, 40 U.S.C. § 270.

3. H.Rep. No. 1263 (74th Cong., 1st Sess.) p. 3.

contractor, was a subcontractor within the meaning of the proviso in sec. 2(a). The Court said:

"The Miller Act itself makes no attempt to define the word 'subcontractor'. We are thus forced to utilize ordinary judicial tools of definition. Whether the word includes laborers and materialmen is not subject to easy solution, for the word has no single, exact meaning. In a broad, generic sense a subcontractor includes anyone who has a contract to furnish labor or material to the prime contractor. In that sense Miller was a subcontractor. But under the more technical meaning, as established by usage in the building trades, a subcontractor is one who performs for and takes from the prime contractor a specific part of the labor or material requirements of the original contract, thus excluding ordinary laborers and materialmen."

After reviewing the congressional history, the Court concluded that the word "subcontractor" was used in the proviso in its technical sense to exclude materialmen and laborers. The Court added:

"Practical considerations underlying the Act likewise support this conclusion. Congress cannot be presumed, in the absence of express statutory language, to have intended to impose liability on the payment bond in situations where it is difficult or impossible for the prime contractor to protect himself. The relatively few subcontractors who perform part of the original contract represent in a sense the prime contractor and are well known to him. It is easy for the prime contractor to secure himself against loss by requiring the subcontractors to give security by bond, or otherwise, for the payment of those who contract directly with the subcontractors. United States for Use [and Benefit] of Hill v. American Surety Co., supra, 200 U.S. 204,

26 S.Ct. 168 [170], 50 L.Ed. 437; Mankin v. United States, for Use of Ludowici-Celadon Co., supra, 215 U.S. 540, 30 S.Ct. [174], 177, 54 L. Ed. 315. But this method of protection is generally inadequate to cope with remote and undeterminable liabilities incurred by an ordinary materialman, who may be a manufacturer, a wholesaler or a retailer. Many such materialmen are usually involved in large projects; they deal in turn with innumerable sub-materialmen and laborers. To impose unlimited liability under the payment bond to those sub-materialmen and laborers is to create a precarious and perilous risk on the prime contractor and his surety. To sanction such a risk requires clear language in the statute and in the bond so as to leave no alternative. Here the proviso of Section 2(a) of the Act forbids the imposition of such a risk, thereby foreclosing Tomkins' right to sue on the payment bond." 322 U.S. at pages 110–111, 64 S.Ct. at page 895.

Although the issue involved in Mac-Evoy was not identical with the issue here, the reasoning in the passages quoted above applies also to the instant case.

There are many subcontractors on large government contracts, and many *sub*-subcontractors, *sub-sub*-subcontractors and persons supplying them with labor and materials. If the bond were held to cover persons having no contractual relationship with either the prime contractor or a subcontractor, as defined above, but only with a *sub*-subcontractor or with a *sub-sub*-subcontractor, it would usually be difficult if not impossible for the prime contractor to protect himself. The relationship between a *sub-sub*-subcontractor and a *sub*-subcontractor, is one of the "more remote relationships" referred to by the House Committee and by the Supreme Court in MacEvoy as not coming within the coverage of the bond. The bond required by the Miller Act protects only those who deal with the

prime contractor or with a subcontractor. United States for Use of Color Craft Corp. v. Dickstein, D.C.E.D.N.C., 157 F.Supp. 126, 129; St. Paul Mercury Indemnity Co. v. United States, 10 Cir., 238 F.2d 917; 36 Boston Univ.L. Rev. 499, at 514, 516.

Newport News seeks to avoid this conclusion by referring to Green Fuel, the subcontractor, as the First Subcontractor, by referring to General Metals, the *sub*-subcontractor as the Second Subcontractor, and by referring to Newport News, the *sub-sub*-subcontractor as the Third Subcontractor, as the judge did in McGregor Architectural Iron Co., Inc., v. Merritt-Chapman & Scott Corp., D.C.M. D.Pa., 150 F.Supp. 323. But the term "Second Subcontractor" is not customarily used in the trade or by the courts, and is inaccurate. Green Fuel was a subcontractor, because it had a direct contractual relationship with the prime contractor. General Metals had no such direct contractual relationship with the prime contractor; its contract was with Green Fuel, a subcontractor. General Metals was therefore not a Second Subcontractor, but a *sub*-subcontractor, which is the term used by the trade, by the House Committee, by the Supreme Court in MacEvoy, and by most other courts. See e. g. Battista v. Horton, 76 U.S.App.D.C. 1, 128 F.2d 29, 31, Groner, J.; Smith Faris Co. v. Jameson Memorial Hospital Ass'n, 313 Pa. 254, 169 A. 233.

Counsel for Newport News notes that in MacEvoy the Supreme Court said [322 U.S. 110, 64 S.Ct. 892.]: "There is no allegation that Miller agreed to perform or did perform any part of the work on the construction project." That statement was important in MacEvoy because Miller was the materialman *to* whom the use-plaintiff delivered the goods. If Miller had agreed to perform or had performed any part of the work, he would have been a subcontractor, because he dealt directly with the principal contractor. The bond protects persons who supply labor and materials *to* a prime contractor or *to* a subcontractor,

whether the supplier be a contractor, a laborer or a materialman. It is the character of the person *to* whom a use-plaintiff supplies labor and materials that is vital. It is immaterial, therefore, that in the instant case use-plaintiff is a *sub-sub*-subcontractor and not a materialman. The controlling fact is that General Metals, the only party with whom use-plaintiff dealt, was *not* a subcontractor.

For the foregoing reasons, use-plaintiff is not entitled to recover from the prime contractor and its surety under the bond. The complaint is dismissed, with costs.